February 14, 2013

Chief Judge Frank J. Bailey
United States Bankruptcy Court
John W. McCormack Post Office and Court House
5 Post Office Square, Suite 1150
Boston, MA 02109-3945

Honorable Judge Bailey,

I understand that you are presiding over the Chapter 11 bankruptcy hearing for Helicos BioSciences. I am sending this on behalf of a group of 20+ private retail shareholders (see page 3) in Helicos who have been loyal and steadfast backers of the company for several years. We are a close knit group and are in regular contact to discuss developments as we see them, pursuing our own research of events relating to the company and keeping a detailed chronology of such. Between us, we now hold just under 7 million shares.

We have been in direct contact with both current CFO Jeffrey R. Moore and ex-CEO Ivan Trifunovich for over a year now, in which we have aired our concerns about the way in which the Company has been managed. In fact, we have made some serious allegations about what we believe has transpired with the company and we were, just prior to the Chapter 11 filing, about to seek legal and regulatory counsel to air these concerns.

A matter of days before we committed to such action, the Company made the offer to meet a representative of our group in Boston to discuss exactly what was happening, but on the condition that we signed a non-disclosure agreement which would have specifically barred us from raising any of the issues discussed and using any such information in any legal action we might initiate. We refused to agree to talks under these constraints. The company filed for Chapter 11 bankruptcy several days later.

We had at first decided to refrain from both proceeding with any legal and regulatory challenge to the company and indeed in contacting yourself, to allow the auction process of the Company's intellectual property to proceed and decide our course of action in the light of whatever the Chapter 11 agreement dictated. However following much discussion amongst our group and further dialogue with Mr. Moore, we have decided that it is in our best interests to make our presence felt with yourself before any judgment is made as there is the possibility that the Chapter 11 filing is just a cynical ploy to allow the completion of a long planned and nefarious strategy which has been to the detriment of us, as common shareholders.

With this in mind, apart from the bizarre offer of talks under the non-disclosure agreement, we would also like to draw your attention to two particular grievances we have had with the company which have direct significance to your judgment in the Chapter 11 filing.

Firstly, you will be aware that two of the secured creditors are in fact two of the original four venture capital financiers of the Company, namely Atlas Venture and Flagship Ventures. These two financiers are now in the position of being secured creditors only as a result of a risk premium agreement which they entered into in November 2010 in exchange for them purchasing secured promissory notes to allow the

continuing financing of the company.

In essence, the company would in all likelihood have been insolvent had this additional financing not been made available. Yet by this deal, Atlas and Flagship gained a disproportionate entitlement to the future sale of any of the Company's intellectual property, a situation which we, as erstwhile fellow common shareholders found highly objectionable. In addition, GE Healthcare, who had an outstanding loan secured against the Company's IP, was paid off at that time. The financing so generated, allowed the Company to pursue a legal action against three of its competitors. This legal action was mysteriously and suddenly dropped after a successful period of discovery which was only days away from jury trial.

It is our contention that Atlas Venture and Flagship Ventures, knowing the value of the Company's intellectual property, may have engineered the scheme of events leading up to the Chapter 11 filing so as to disproportionately benefit from the inevitable and eventual sale of the intellectual property.

The second point we wish to bring to your attention cuts to the very heart of why the Company has failed and what has actually led it into bankruptcy.

Failing to gain commercial traction by the sale of its Heliscope sequencing machine, the Company changed direction in a major and much heralded strategic move in June 2010. Helicos pledged it was on the verge of entering the diagnostics business (http://ir.helicosbio.com/releasedetail.cfm?ReleaseID=482606) with the imminent launch of a number of diagnostic tests based on the Company's intellectual property. Of particular note here is the proprietary IP covering Helicos' unique method for isolation-free sequencing of the BRCA1 gene associated with breast cancer technology — which Dr. Patrice Milos (whom your court has agreed be retained by the company) indicated may have allowed Helicos to circumvent the patents used, very profitably, by the sole player in this field — Myriad Genetics). What actually transpired was that no launch of this business occurred and by November 2010, not only was it suddenly announced that these aspirations had been shelved, but a new company, Foundation Medicine, suddenly appeared (operating from the very same address as Helicos and subsequently employing some of Helicos' key scientific staff). Foundation Medicine offers what appears to be those very same diagnostic tests, yet with no published IP. At that time, the risk premium agreement was penned with Atlas and Flagship. It is our contention that the lucrative potential diagnostics business may have been ceded to Foundation Medicine. What if it now turns out that Foundation Medicine is bidding for the Company's intellectual property in the Chapter 11 auction process?

A further point, which was an integral part of the chain of events that led to the Company seeking bankruptcy protection, was the enormous naked short selling of the Company's shares which occurred whilst Helicos was still listed on the Nasdaq exchange. The resultant "fails-to-deliver" are an easily viewed point of public record. These naked short positions were never repurchased in the market and management did not voice any concern over the issue choosing surprisingly to quickly delist on the OTC market. The short interest simply disappeared. This is an issue we intend to take up separately with the SEC.

We hope that you can appreciate our concern and suspicion surrounding the motives behind Helicos' descent into Chapter 11 bankruptcy. If you need any further clarification on these points please feel free to contact me.

We hope that you can appreciate our concern and suspicion surrounding the motives behind Helicos' descent into Chapter 11 bankruptcy. If you need any further clarification on these points please feel free to contact me.

We trust that you will take our comments into consideration in your deliberations and hope as a group we can be kept informed of developments in the proceedings.

Kind Regards,

Phillip Seidel — Milwaukee, WI (market_watchr@yahoo.com)
Martyn Sinclair — Brighton, UK (sinclairmartyn@hotmail.com)
Guy A. Hoelzer — Reno, NV (hoelzer@unr.edu)
Barry Grossman — Levittown, NY (barryg3@earthlink.net)
James W. Dorrance — Elkland, PA (jdorrance@stny.rr.com)
Patricia and Greg Kempton — Park City, UT (movn_on_up@yahoo.com)
Cora Scott — Los Angeles, CA (zippitydoodaday@yahoo.com)
James Fiske — Salmon Arm, BC Canada (jg360191@yahoo.ca)
Craig McKitrick — Winnipeg, MB Canada (stoxinvester@yahoo.com)
Enrico Rusticali — Calgary, AB Canada (hrusty@gmail.com)
Tony Bailey — Raleigh, NC (Bikecartz@gmail.com)
Kent Schewe — Chicago, IL (mekents@sbcglobal.net)
Jeff Riggs — Canton, GA (jeff_riggs@verizon.net)